## Case No. 12,279.

### The SAMPSON.

### The IOLA.

#### [4 Blatchf. 28.] [1]

Circuit Court, S. D. New York. April 7, 1857. [2]

COLLISION—CONFLICTING TESTIMONY ON APPEAL—DAMAGES—EXAGGERATED BILLS—FRAUD—SALVAGE.

1. Where the proofs in a collision case were contradictory and irreconcilable, seven witnesses having been examined on each side, who were present at the collision, and the case was one depending altogether on the credibility of witnesses, this court affirmed the decree below, which was in favor of the libellant.

[Cited in The Maggie P., 25 Fed. 206; The Rockaway, Id. 776; Assante v. Charleston Bridge Co., 40 Fed. 767; The Parthian, 48 Fed. 564; The Albany, Id. 565; Re Hawkins, 13 Sup. Ct. 527.]

2. Where, in a collision case, it appeared that several of the bills for repairs to the injured vessel were exaggerated, with the knowledge and connivance of the master, if not by his procurement, with a view to impose upon the underwriters, and the district court reduced the items to the lowest estimate: Held, that such reduction was proper.

[Cited in Williams v. The Olive Baker, 36 Fed. 717.]

3. If it had appeared that the owner of the vessel had been privy to or concerned in the fraud, it would have been proper to reject the entire amount of the exaggerated bills.

4. As a general rule, in order to put an end to impositions of this description, the owner

must be held responsible for the acts of the master.

5. If, in this case, the court below had rejected the entire amount of the bills tainted with the fraud, this court would have upheld such decision.

6. Any ship-master or material man conniving with the master, or with the agent of the owner, in any such fraud, will be disabled from collecting any portion of his demand.

7. A vessel which is condemned in damages, in a collision case, will not be allowed salvage for rescuing the other vessel from sinking, by towing her to a place of safety.

[Cited in The Clara, Case No. 2,788; The Clara Clarita, 23 Wall. (90 U. S.) 18; Southwestern Transp. Co. v. Pittsburg Coal Co., 42 Fed. 920.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by the owners of the brig Iola against the steamboat Sampson, to recover damages for a collision which occurred a short distance outside of Sandy Hook, on the south shore of Long Island. The district court decreed for the libellants. [Case No. 7,057.] The commissioner reported in their favor $2,150, which was reduced, on exceptions to his report, to $1,121.20. They claimed $4,585.73. Both parties appealed from the decree.

William M. Evarts and Edward H. Owen, for libellants.

Welcome R. Beebe and Charles Donohue, for claimants.

NELSON, Circuit Justice. The bow of the steamer came in contact with the brig upon her starboard side, cutting her down to the water's edge. The Sampson was lying at a usual place for steamers waiting for employment to tow up vessels coming from sea into the harbor of New York. The break in the side of the brig was stopped with canvas, so as to enable the steamer to tow her to the Atlantic docks to be repaired. The libellants claim that the Sampson was seen by them some three or four miles ahead, after the Iola had taken her course eastward, her destination being to St. Johns, in the Province of New Brunswick, where she belonged; that the steamer was then lying still, and not in motion upon the water; that the course taken by the brig would have caused her to pass the Sampson's bows, giving a wide berth; but that, as she neared the steamer, and when within some half a mile, the latter suddenly started her engine, and ran across the track of the brig, and thereby produced the collision.

The steamer claims that she was lying still upon the water; that she made no movement forward; that the only movement made by her was to back, with a view to avoid the brig, which was coming directly against her bows; but that, notwithstanding every effort to back, the collision could not be avoided. The whole case turns upon these two

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2 [Affirming Case No. 7,057.]

allegations. The proofs are contradictory and irreconcilable, all the witnesses examined on board of the brig sustaining the view taken by the libellants, and all on board of the steamer the view presented by her in the defence. Some seven witnesses have been examined on each side, who were present at the collision.

The court below decreed in favor of the libellants. In a case so nicely balanced, and depending altogether upon the credibility of witnesses, I am not inclined to interfere with the decision below.

The libellants, notwithstanding they obtained the decree, have also appealed from it, on the ground that the damages awarded do not cover their loss. The Iola was insured—at least it was so stated by the master; and there is some evidence in the case, that several of the bills made out by the material men, and the workmen engaged in repairing the vessel, were exaggerated, with the knowledge and connivance, if not by the procurement of the master, with a view to impose upon the underwriters. This fact, doubtless. influenced the court below to reduce the items to the lowest estimate. It is due to the ship-masters and others at this port, to say, that this is the first instance of a fraud of this description which has come under my notice. It has been properly rebuked, and any advantage to be derived from it prevented, by the decision of the court below. I do not doubt, that if it had appeared that an owner had been privy to or concerned in the fraud, the entire amount of the exaggerated bills claimed in the expenses of repairs would have been rejected. As a general rule, however, in order to put an end to impositions of this description, the owner must be held responsible for the acts of the master. These impositions can be reached and properly dealt with in no other way. If, in this case, the court below had rejected the entire amount of the bills tainted with the fraud, I should have upheld its decision. Moreover, it should be understood, that any ship-master or material man conniving with the master, or with the agent or the owner, in any such fraud, will, should the fact appear, be disabled, upon established principles of law, as well as of morals, from collecting any portion of his demand.

The idea seems to have influenced the parties, founded upon the principle of allowing one-third of the new repairs to the underwriters—in other words, a deduction to that amount in the charge—that, in order to save the owner from any expense, the bills should be exaggerated so as to cover this one-third. To carry into effect the scheme, the master is to pay simply the fair price for the materials or work. For this purpose, two sets of bills are made out—one to contain the actual bona fide value of the materials and cost of the labor, and the other the enhanced value, to be furnished to and claimed from the underwriters.

It is a matter of gratification that the scheme has been exposed and defeated; and I trust that its publicity will have the effect to induce all persons concerned in settling and adjusting damages in cases of collision, to scrutinize the bills of repairs, and see to it that impositions of the character here developed do not escape their notice. They will be sustained in the application of the most rigorous rules, in determining the expense of repairs, with a view to prevent abuses, so far as their rulings may come under revision by this court.

The decree of the court below is affirmed; and, as both parties have appealed, the affirmance is without costs to either side.

The owners of the Sampson also filed a libel in rem, in the district court, against the Iola, to recover salvage for towing her, after the collision, to the Atlantic docks, for repairs. The district court dismissed that libel, and the libellants appealed to this court. That appeal was heard at the same time with the appeals in the suit against the Sampson, and was argued by the same counsel. This court affirmed the decree below, with costs, holding that the Sampson could have no just claim for salvage for doing what was in her power towards saving the Iola; that the Sampson herself was the most deeply interested in that service; that, if it had not been rendered, the Iola would probably have sunk, resulting in a total loss of vessel and cargo; that the salvage service was, therefore, rendered by the steamer for her own benefit; and that there was, of course, no pretext for charging it on the brig.