### ASSANTE *v.* CHARLESTON BRIDGE Co. *et al.*

*(District Court, D. South Carolina. December 10, 1889.)*

1. COLLISION—CONFLICTING EVIDENCE.
   The witnesses for libelant were contradicted by those for respondent. The credibility of none of them was impeached, and all seemed equally worthy of credit. The libel was dismissed, and the costs were divided.
2. SAME—JURISDICTION—BRIDGES OVER NAVIGABLE STREAM.
   There can be no doubt that a libel *in personam* will lie against the owners of a draw-bridge across a navigable stream if injury be done to a vessel passing through the draw.

*(Syllabus by the Court.)*

In Admiralty. Libel for damages.
*Bryan & Bryan*, for libelant.
*Mitchell & Smith*, for Thomas Young.
*John F. Ficken*, for the bridge company.

SIMONTON, J. The brig Emanuele was in tow of the tug Monarch up the Ashley river, an estuary of the Atlantic ocean. The Charleston Bridge Company have their bridge across the Ashley, about a mile and a half from its mouth. The bridge runs about east and west, and has a draw-bridge with two openings, each about 76 feet wide, divided by

a center pier, on which the draw-bridge works.    The tug took the tow up on the western side of Ashley river, and, opening the western draw, steered directly for it.    The tow-line was about 300 feet long.    The brig, acting under instructions given to her when the towage began, followed in her wake.    Just as the brig entered the draw, being within the fenders, she came into collision with the fenders on the western side of the draw, striking on her port bow, near the stern.    She glanced off, and struck on the pivot pier on the east side of this draw.    Her starboard anchor, hanging from the cat-head, became entangled in the bridge, and the brig, hanging onto the anchor chain, swung with tide, then three-quarter flood.    She was disengaged, and pursued her course up the river.    The port anchor of the brig was hanging by its chain from the hawse-pipe.

Libelant charges that the collision was due to two causes acting together.    The one was that the bridge is built not directly across, but obliquely to, the current of the river; that the tide flows through the draw not parallel to, but at an angle with, the pivot pier; that vessels going through the draw are thus drawn against its sides by the tide. This is a defect in the construction of the bridge, unnecesarily obstructing a navigable stream, and so unlawful.    The other cause of the accident is said to be the unskillful or negligent management of the tug in not allowing for this trend of the tide, and so adding its impetus, drawing the brig upon the fenders.    The master and crew of the brig and the master and crew of the tug have been examined, each witness apart from the others.    The testimony is directly contradictory.    The people on the brig, including an interpreter, confirm the allegations of the libel, and fix the accident upon the action of the tide within the draw, aided by the negligent and unskillful management of the tug.    On the other hand, the master and engineer of the tug, and a mariner who was a passenger on board of her, himself a tug-master, all said that when the tug was nearly through the draw, proceeding carefully, and the brig was between the fenders, the latter took a sudden, unexpected, and unaccountable sheer to port, and went right on the fenders, bows on.    That nothing was done by the tug to cause this.    They attribute it to unseamanlike conduct on the brig, and a sudden shifting of her helm.    The crew of the brig deny that she made this sheer.    They also say that the helm was not shifted until she struck.    It was then put a-starboard.    Here we have a direct contradiction by witnesses against whom there is no attack, and who seem to be telling the truth.    Like Judge MORRIS in *The Leversons,* 10 Fed. Rep. 754, I have found the attempt to discover the cause of the collision attended with more than the usual embarrassment. There are two considerations which may lead to a conclusion.    One is that the brig made just such a sheer, unexcepted, sudden, and unaccountable, a short time after the towage began, near the mouth of the river.    At least so says the master of the tug, and the master of the brig was examined in reply, and no attempt was made to contradict this. The proctor for libelant is most accurate and watchful, showing always full possession of his case.    The omission is significant.    So, also, the witnesses for the tug live in this community.    They have acquired a

general character, good or bad. Their credibility has not been assailed. Without doubt it would have been assailed if the attack were profitable. The case being thus nicely balanced, I will follow the course of Mr. Justice NELSON under similar circumstances, (*The Sampson*, 4 Blatchf. 28,) and let things stand as they are. For this reason, also, no ruling is made upon the construction of the bridge. If the collision arose from the sheer, it cannot be attributed to the bridge. I am not prepared to say that it did not arise from the sheer. There can be no doubt as to the jurisdiction. *Railroad Co.* v. *Tow-Boat Co.*, 23 How. 209; *Atlee* v. *Packet Co.*, 21 Wall. 389; *The Arkansas*, 17 Fed. Rep. 383. I will therefore dismiss the libel; the costs to be equally divided between the libelant and both respondents.